## CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT ("Agreement") is made as of this 29th day of March, 2006, between CHICAGO TITLE LAND TRUST CO. AS TRUSTEE UNDER LAND TRUST NUMBER 8002345462 AND NOT PERSONALLY, MOHAMMAD SIDDIQUI, MOHAMMAD QUADEER, 5601-09 CLARK COMMONS, INC., AND 5601-09 N. CLARK ST., LLC, (individually and collectively "Borrower") and BROADAWY BANK, an Illinois banking corporation ("Lender") (collectively the "Parties").

## R E C I T A L S:

A.      Borrower as of the date hereof holds title in fee simple to a parcel of real estate located at 5601-09 N. Clark Street in the City of Chicago ("City"), County of Cook ("County") and State of Illinois, legally described on **Exhibit "A"** attached hereto and made a part hereof ("Land" or "Property") upon which Borrower intends to construct certain improvements ("Improvements" or "Project") to be completed in all respects on or before September 29, 2007 ("Completion Date").

B.      Borrower intends to enter into a construction contract ("Construction Contract") with a general contractor ("General Contractor") pursuant to which General Contractor is to construct the Improvements. All Improvements are to be constructed in substantial conformity with final plans and specifications ("Plans and Specifications") prepared by an architect ("Architect"). Plans and Specifications shall be submitted to and approved by Lender and by all Federal, State and local municipalities or subdivisions thereof, having jurisdiction over the construction and intended use of the Improvements ("Applicable Laws").

C.      Borrower has requested Lender to make a loan to Borrower in an amount not to exceed FOUR MILLION FIVE HUNDRED AND TWENTY FIVE THOUSAND ($4,525,000.00) ("Loan" or "Loan Amount"). Loan proceeds shall be used to pay part of the costs of constructing Improvements as itemized on a budget ("Budget"). "Budget Costs" are Borrower's equity plus the Loan proceeds necessary to meet all construction financing and leasing costs for the Property and Improvements as determined by Lender in its sole discretion. The Loan shall be evidenced by this Agreement and by the Note (as defined below) and secured by the Mortgage covering the Land and Improvements and by such security instruments and additional documents as Lender may require, as hereinafter described. For convenience, the Land and Improvements are sometimes hereinafter collectively referred to as the "Premises".

D.      Lender is willing to make the Loan to Borrower for the purposes hereinabove set forth, all upon the terms and conditions herein set forth.

NOW, THEREFORE, in consideration of the foregoing Recitals and the covenants and conditions, representations and warranties contained herein, the Parties hereto agree as follows:

A0028847 BKA 1

1



## ARTICLE ONE

## INCORPORATION OF RECITALS

Recitals A. through D., inclusive, immediately above, are incorporated into this Article One as though fully set forth herein.

## ARTICLE TWO

## DEFINITIONS AND EXHIBITS

2.01.    The following words, terms and phrases used herein are defined in the following references and all other words, terms and phrases shall have the meanings set forth in the following references:

| Defined Term | Reference |
|---|---|
| Affiliates | Article 5.03 |
| Agreement | Introduction |
| Applicable Laws | Recital B |
| Architect | Recital B |
| Architect's Certificate | Article 6.01 B (1) |
| Borrower | Introduction |
| Budget | Recital C |
| Budget Costs | Recital E |
| CERCLA | Article 3.01 U |
| Change Orders | Article 5.05 |
| City | Recital A |
| Closing Date | Article 9.01 |
| Completion Date | Recital A |
| Construction Escrow | Article 4.01. F |
| Construction Contract | Recital B |
| Construction Schedule | Article 5.01. A |
| Consulting Architect/Engineer | Article 5.01. H |
| Contractor's Sworn Statement | Article 3.01 K |
| Contractual Agreements | Article 3.01 D |
| County | Recital A |
| Cut-Off Date | Article 5.03 |
| DCR | Article 10.02 |
| Default Rate | Article 12.04 |
| Deficiency | Article 4.07 |

A0028847.BKA 1

Environmental Consultant          Article 5.01. H
Environmental Laws                Article 3.01. V
Environmental Report              Article 6.01. B (3)
ERISA                             Article 15.02
Extended Maturity Date            Article 10.03
Extension Fee                     Article 10.02 D
Final Disbursement                Article 4.01. B
Further Extended Maturity Date    Article 10.03
General Contractor                Recital B
Hazardous Materials               Article 3.01. U
Improvements                      Recital A
Indemnified Party                 Article 15.07
Initial Disbursement              Article 4.01. A
Interest Obligation               Article 4.05
Interest Reserve                  Article 4.05
Land                              Recital A
Lender                            Introduction
Loan                              Recital C
Loan Documents                    Article 4.03
Maturity Date                     Article 4.02 B
Monetary Default                  Article 12.01
Mortgage                          Article 4.03. A
Net Operating Income              Article 5.01 AA
Non-Monetary Default              Article 12.01
Note                              Article 4.03
Owner's Statement                 Article 3.01 L
Parties                           Introduction
Permits                           Article 3.01 F
Permitted Exceptions              Article 6.01 B (5)
Plans and Specifications          Recital B
Plat of Survey                    Article 6.01 B (6)
Premises                          Recital C
Project                           Recital A
Property                          Recital A
RCRA                              Article 3.01 U
Request for Advance               Article 6.01 B (ll)
Retainage                         Article 9.04
Savings                           Article 4.06
Subsequent Disbursements          Article 6.02
Title Insurance Company           Article 6.01 B (5)
Title Policy                      Article 6.01 B (5)
Warranties and Representations    Article 3.01.

A0028847.BKA 1

3

2.02.   The following exhibit is attached hereto and made a part hereof:

Exhibit "A" -   Legal Description

## ARTICLE THREE

## WARRANTIES AND REPRESENTATIONS

3.01.   Borrower warrants and represents as follows (collectively "Warranties and Representations"):

A.   Borrower consists of an Illinois land trust and two individuals;

B.   Borrower has good and marketable title to the Premises, free and clear of all other liens and encumbrances, subject only to the Permitted Exceptions;

C.   All financial statements and all financial data heretofore delivered to Lender in connection with the Loan or the application for the Loan, by or on behalf of Borrower are true and correct in all material respects. Borrower's year end financial statements have been prepared in accordance with generally accepted accounting principles consistently applied and Borrower's other financial statements shall be prepared in accordance with accounting principles, consistently applied. Borrower's financial statements and financial data fairly represent the respective financial conditions of the Borrower who are the subjects thereof as of the dates thereof and for the periods covered thereby, and no material adverse change has occurred in the financial conditions presented therein since the respective dates thereof;

D.   Borrower has the full power and authority to enter into this Agreement, to execute, deliver and perform all of the terms, covenants, conditions and agreements contained herein, in the Construction Contract and agreements with all others providing services for the construction of the Improvements including, but not limited to mechanical and structural engineers, (all of which shall be at Lender request submitted to Lender for its approval and together with the Construction Contract and other agreements of Borrower related to the Premises are collectively "Contractual Agreements");

E.   There are no actions, suits or proceedings pending, or to the knowledge of Borrower, threatened against or affecting Borrower or the Premises before any court or any governmental, administrative, regulatory, adjudicatory or arbitrational body or agency of any kind which would materially or

A0028847.BKA 1

4

adversely affect the value of the Premises, the existing or intended use thereof or the performance by Borrower of its obligations pursuant to and as contemplated by the terms and provisions of the Operating Agreement, Contractual Agreements, Applicable Laws, this Agreement and Loan Documents, including the execution and delivery hereof and thereof;

F.  To the best knowledge of Borrower, based on reasonable investigation, Borrower has complied and will continue to comply with all Applicable Laws and Environmental Laws to be complied with in connection with the construction of the Improvements. All permits, consents, approvals or authorizations by, or registrations, declarations, withholding of objections or filings (collectively, "Permits") with any governmental body necessary in connection with the valid execution and delivery of this Agreement or any Loan Document, and any and all other documents executed in connection with the foregoing, or presently necessary for the construction of the Improvements, have been obtained or will be obtained when required, copies of the Permits obtained to date have been provided to Lender, and the Permits are valid, adequate and in full force and effect. Copies of the Permits yet to be obtained will be provided to Lender when said Permits are obtained and said Permits will be valid, adequate and in full force and effect as required by this Agreement. Construction of the Improvements and the intended use, occupancy and operation thereof will in all respects conform to and comply with all covenants, conditions, restrictions and reservations affecting the Premises and with all applicable zoning and environmental protection, use and building codes, laws, regulations and ordinances.

G.  All roads, streets, traffic turn lanes and accessways necessary for the full utilization of the Premises for their intended purposes are available to the Property.

H.  All utility services and facilities for the construction of the Improvements and the operation thereof for their intended purposes are available for construction and/or occupancy and operation of the Improvements.

I.  The Contractual Agreements are the duly authorized, valid and legally binding obligations of Borrower and may be enforced strictly in accordance with their respective terms;

J.  This Agreement, the Loan Documents and the Contractual Agreements constitute (or when executed will constitute) the duly authorized, valid and legally binding obligations of Borrower, General Contractor, Architect or

A0028847.BKA 1

other parties thereto, as the case may be, and may be enforced strictly in accordance with their respective terms;

K.    To the best knowledge of Borrower, based on reasonable investigation, General Contractor's sworn statements setting forth all subcontractors and material suppliers who or which will furnish services, labor, or materials for Improvements ("Contractor's Sworn Statement"), owner's statement as to Budget Costs ("Owner's Statement"), the Budget, Construction Schedule, Loan Documents, Contractual Agreements, Requests for Advance and any other document, instrument, financial statement, report, notice, schedule, certificate or statement required by the terms and conditions hereof and previously furnished or which are to be furnished to Lender neither contain nor shall the same contain any untrue statement of a material fact or omit or will omit to state a fact material to this Agreement, the construction of the Improvements or the intended use thereof;

L.    Borrower is not and shall not be in default of its agreements specified herein, Applicable Laws and Contractual Agreements or any other agreement to which Borrower is a party, the effect of which would materially or adversely affect the performance by Borrower of its obligations pursuant hereto and thereto, including the execution and delivery of this Agreement, Loan Documents, Contractual Agreements, and Applicable Laws;

M.    Neither Borrower nor to the best knowledge of Borrower, based on reasonable investigation, any of its agents or employees has received any notice from any governmental authority nor do any of them have knowledge of any violation of Applicable Laws which will not be cured on or before completion of the Improvements or of any proposed condemnation or eminent domain proceedings concerning the Land;

N.    To the best knowledge of Borrower, based on reasonable investigation, no circumstance or event exists which, by the passage of time or service of notice, or both, will give rise to any claim against Borrower which could prevent Borrower from performing the terms, covenants, conditions and agreements required of it, respectively, pursuant to or as contemplated by the Contractual Agreements, Applicable Laws, this Agreement or the Loan Documents;

O.    The Loan is a business loan pursuant to the laws of the State of Illinois and the payment of interest thereon at the rate specified in the Note does not

violate the provisions of any federal law, state statute or municipal ordinance applicable to usury or consumer credit;

P.  All services, labor and material to be installed on or incorporated into the Land and Improvements and which are to be paid from the proceeds of the Loan or other available funds, shall be in substantial conformity with Plans and Specifications, Contractual Agreements and Applicable Laws, and shall be constructed with good quality materials free from defects;

Q.  Except for Lender Fee, no brokers' fees or commissions are payable with respect to the Loan;

R.  The Budget Costs and revenues and other items set forth on the Budget truly and accurately reflect or reasonably estimate projected income and either estimated costs or actual contracted for amounts paid or to be incurred to complete Improvements in accordance with Plans and Specifications and Applicable Laws. Borrower shall promptly advise Lender if the actual or projected costs of any line item on the Budget exceeds the amount specified thereon for such item.

S.  The Plans and Specifications which will be submitted to Lender for approval will contain sufficient details requisite to begin the construction of the Improvements in accordance with Applicable Laws;

T.  Intentionally Omitted,

U.  To the best knowledge of Borrower, based on reasonable investigation, the Property does not now contain and, to the actual knowledge of Borrower, the land immediately adjacent to the Property, does not contain reportable quantities of Hazardous Materials, and Borrower does not intend to and shall not use any part of the Property or Improvements for the manufacture or storage of Hazardous Materials. Further, Borrower has neither received any notice, summons, citation, directive, letter or other communication, written or oral, from any agency or department of the City, Cook County, the State of Illinois, the United States Government or any agency of government, nor has any action ever been commenced or threatened by any such party concerning any intentional or unintentional action or omission on the part of Borrower or, to the actual knowledge of Borrower, adjacent owners which resulted from the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of Hazardous Materials into or onto the Property or land adjacent to the Property;

A0028847 BKA 1

7

For purposes of this Agreement "Hazardous Material" means: (i) "hazardous substances", as defined by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), (ii) "hazardous wastes", as defined by the Resource Conservation and Recovery Act ("RCRA"); and (iii) any pollutant or contaminant or hazardous, dangerous or toxic chemicals, materials, or substances within the meaning of any other applicable federal, state, or local law, regulation, ordinance, or requirement (including consent decrees and administrative orders) relating to or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material, all as amended or hereafter amended; but specifically excluding any such substance, material or waste that is not required by law to be remediated or abated and/or the presence of which is not a violation of any environmental law and/or the presence of which is at levels below those requiring any remediation or abatement under any environmental laws.

V.    To the actual knowledge of Borrower, the Property, and the use and operation thereof, are currently in compliance with all applicable laws, ordinances, requirements and regulations (including consent decrees and administrative orders) relating to public health and safety and protection of the environment, (collectively, "Environmental Laws").

3.02.   The Warranties and Representations shall be true and correct on the Closing Date and shall remain true and correct in all material respects at all times thereafter until the principal balance and all accrued and unpaid interest due and owing on the Loan have been paid in full, shall be reaffirmed as of the date of each Request for Advance and shall be true and correct in all material respects on the date of payment of the amounts disbursed by reason of Requests for Advance.

## ARTICLE FOUR

## AGREEMENT TO LEND AND BORROW, LOAN TERMS, EVIDENCE OF AND SECURITY FOR LOAN AND RESERVES

4.01.   Subject to the terms and conditions of this Agreement, Lender agrees to lend and Borrower agrees to borrow, from time to time, amounts up to but not exceeding the total amount of the Loan, the proceeds of which shall be used and disbursed as hereafter provided, PROVIDED, HOWEVER, that:

A.    The initial disbursement of the Loan shall be made on or after the Closing Date in the discretion of Lender ("Initial Disbursement") subject to

A0028847.BKA 1

satisfaction of the conditions to such Initial Disbursement. Subject to Lender discretion, the Initial Disbursement may be used by Borrower to pay for partial reimbursement for the acquisition of the Property, pay for certain permits necessary for the construction of the Improvements and pay in full all fees, costs and other expenses due or incurred by Lender that have not been previously paid on the Closing Date;

B.   The final disbursement shall be made upon satisfaction of the conditions therefor set forth herein ("Final Disbursement");

C.   All Subsequent Disbursements shall be made not more frequently than monthly, and together with the Final Disbursement, only upon Requests for Advance received by Lender not less than ten (10) business days prior to the date on which the applicable Subsequent Disbursement or Final Disbursement is required and if, without the fault of Lender, the amount then requested is not disbursed on the date required, interest thereon, at the rate of interest provided in the Note, shall accrue;

D.   All disbursements (except for payments on account of interest due on the Loan, Lender Expenses and Final Disbursement) shall be made in amounts of not less than FIFTY THOUSAND DOLLARS ($50,000.00) except for the Final Disbursement;

E.   The execution hereof by Borrower hereby constitutes an irrevocable direction and authorization to Lender to make the Initial Disbursement, Subsequent Disbursements and Final Disbursement as money loaned pursuant to the terms and conditions of this Agreement. All such disbursements shall satisfy pro tanto the obligations of Lender hereunder and shall be evidenced by the Note and secured by the Loan Documents;

F.   All disbursements (except for payments on account of interest due on the Loan and Lender Expenses) shall be paid by Lender through the Title Insurance Company directly to subcontractors, contractors and others furnishing labor, material or services with respect to Improvements, pursuant to the terms and conditions of a construction loan escrow agreement to be established by Lender with the Title Insurance Company ("Construction Escrow");

G.   Construction of the Improvements shall be completed on or before November 29, 2007 in strict compliance with the Plans and Specifications approved by Lender.

A0028847 BKA 1

4.02.   The principal balance due and owing on the Loan shall bear interest as provided in the Note and shall be payable as follows:

A.   Accrued interest only on the first day of each month, commencing with the first day of the first month immediately following the making of the Initial Disbursement, up to and including November 29, 2007;

B.   A final payment of the principal balance and accrued and unpaid interest on September 29, 2007 ("Maturity Date").

4.03.   The Loan shall be evidenced by the note of Borrower, payable to the order of Lender, in the full amount thereof ("Note"), and secured by the following documents in addition to the Note (collectively "Loan Documents"):

A.   Construction Mortgage encumbering the Property and Improvements executed by Borrower ("Mortgage")

B.   Assignment of Contractual Agreements, including the General Contractor Agreement, Architect's Agreement and agreements with engineers, if any;

C.   Security agreement and financing statements;

D.   Assignment of Leases and Rents;

F.   Environmental Indemnification Agreement executed by Borrower; and

G.   Such other loan documents as GMACCM may reasonably require.

4.04.   Disbursements shall be made only at such time as the Loan is "in balance". The Loan shall be deemed to be "in balance" PROVIDED THAT Borrower has invested sufficient funds in the Property and Improvements to assure Lender, in its sole and reasonable judgment, that the undisbursed portion of the Loan is sufficient to pay the Budget Costs and any other costs to meet all construction, financing and leasing costs for the Property and Improvements. The Loan at all times during the term shall be in balance.  In exercising its judgment with regard to construction costs, Lender shall make its determination based upon reports of its Consulting Architect/Engineer.  Borrower agrees to deposit with Lender at the opening of the Loan and at any other time as Lender shall determine the Loan is not in balance, equity in an amount necessary to meet all Budget Costs for the Premises as determined by Lender in its sole and reasonable discretion.  The equity amount contributed on the Closing Date shall be equal to the difference between the total Budget and the Loan Amount.  Budget Costs shall include, but not be limited to, all amounts required to complete the Improvements less the Loan Amount.  Borrower

A0028847 BKA 1

10

agrees that the Budget may be revised throughout the construction of the Improvements and may require the deposit of additional equity for the Loan to remain in balance.

4.05.   Lender shall not be obligated to advance that part of the Loan which, in its opinion, is necessary to assure the payment of interest due and owing on the Loan ("Interest Obligation") other than the amount that Lender shall withhold from advances on the Loan as an Interest Reserve ("Interest Reserve"), Lender Fee and Lender Expenses and any other usual and customary items payable to Lender, and pay the same to itself in the amount and at the time when the same are, by the terms and conditions of this Agreement, Note and Loan Documents, due and payable. The original principal sum of the Note has been determined on the basis of a certified cost breakdown for the Premises prepared by the Borrower and submitted to Lender and memorialized in the Budget attached hereto as <u>Exhibit B</u>, setting forth the estimated cost for the completion of the Improvements, and accrued interest on the disbursed principal of the Note during the term of the Loan. On the first day of each month, Lender will disburse a portion of the principal of the Note sufficient to pay accrued interest then due and payable on the Note, and the amount thereof shall reduce the balance of the Interest Reserve. Under no circumstances shall the undisbursed principal of the Note be disbursed to pay accrued interest thereon upon depletion of the balance of the Interest Reserve except upon the express written consent of Lender, provided that there are funds available in the Budget which, in Lender reasonable judgment, will not be necessary for other project costs. Further, the depletion of the Interest Reserve shall not in any manner affect or impair the Borrower's obligation to continue to pay all interest accruing on the Loan. In lieu of disbursing principal of the Note to Borrower for payment of accrued interest thereon, Lender may handle such disbursement and payment by making appropriate entries on the books and records of Lender.

4.06.   The Budget reflects by line or category, the purpose for which funds advanced hereunder are to be applied. Lender shall not be required to disburse for any category more than the amount specified therefor in the Budget unless and only to the extent that actual costs for completed categories is less than the amount specified on the Budget for such categories ("Savings") in which case the amount of Savings may be applied by Borrower to such incomplete categories as requested by Borrower, subject however to Lender reasonable approval. In all events, all Savings, if not so applied, shall be allocated to a "contingency" line item. Savings and contingency line items may be applied to cost overruns only for construction of the Improvements or Budget Costs directly related to construction of the Improvements and shall be released based upon the percentage of completion of construction subject to the approval of Lender.

4.07.   In the event that the actual projected costs of any line item in the Budget exceeds the amount specified thereon for such line item and if in the sole opinion of Lender, after giving effect to the balance due and owing under the Budget, reasonable allocation of the amounts remaining in the contingency line item and the amount of Savings available for reallocation and any other amounts available to Borrower for the payment of Budget Costs, the amount remaining

to be disbursed on account of Loan proceeds is insufficient to pay the Budget Costs, a deficiency has occurred ("Deficiency").

## ARTICLE FIVE

## COVENANTS OF BORROWER

5.01.   Borrower shall:

      A.    furnish or cause to be furnished the services, labor and material necessary and required to complete Improvements in substantial conformity with Plans and Specifications, Contractual Agreements and Applicable Laws within the time sequences set forth on a construction schedule submitted to and approved by Lender ("Construction Schedule");

      B.    except as allowed to contest mechanics' liens in Article Eight of this Agreement, keep Premises free and clear of all liens and of accruing taxes and special assessments thereon;

      C.    except as allowed by Lender or in the Mortgage, not permit the transfer, assignment or conveyance of any membership interest in Borrower or the placement of junior or subordinate financing on the Property;

      D.    furnish to Lender, promptly upon Borrower's knowledge thereof, any notice of a default or event which, with the giving of notice or passage of time, or both, would be a Monetary Default or Non-Monetary Default, whether by Borrower or any other party, or notice of threatened or pending litigation or governmental proceedings which would materially or adversely affect the financial condition of Borrower or affect the timely completion of Improvements, or which concerns compliance by Borrower with Environmental Laws;

      E.    promptly pay all Budget Costs, PROVIDED THAT Lender is authorized to pay Budget Costs directly and deduct the same from the proceeds of the Initial Disbursement, Subsequent Disbursements and Final Disbursement, as the case may be;

      F.    not record or permit the recording of this Agreement without the prior written consent of Lender;

      G.    promptly advise Lender if the actual or projected costs of any line item on the Budget exceeds the amount specified thereon or if a Deficiency has

occurred and within five (5) business days upon demand by Lender, pay to Lender a sum equal to Deficiencies, which shall not bear interest and shall be disbursed prior to any additional proceeds of Loan;

H.    cooperate with and furnish to Lender and the consulting architect or engineer retained by Lender ("Consulting Architect/Engineer") and the consultant which prepared the Environmental Report ("Environmental Consultant"), to review Plans and Specifications and such other data, information or drawings as may be required by such Consulting Architect/Engineer or Environmental Consultant and shall permit the Consulting Architect/Engineer and Environmental Consultant free access to the Land and Improvements for the purpose of making physical inspections thereof;

I.    at all times, perform all of the terms, covenants, conditions and agreements required pursuant hereto and to the Applicable Laws, Contractual Agreements and Loan Documents;

J.    employ and utilize all labor contracted or hired and all materials contracted or purchased, which shall be paid from the proceeds of the Loan solely for the benefit of the Land and Improvements;

K.    receive and hold in trust all disbursements of the proceeds of the Loan for the purposes specified in the Budget and Requests for Advance;

L.    permit Lender and its representatives and agents, upon one (1) business days notice during normal business hours, access to their records and books of account in connection with the Premises, including any supporting or related receipts, purchase orders, evidences of payment, vouchers or papers maintained by or on behalf of Borrower, or its representatives or agents, which access shall include the right to make extracts or copies thereof;

M.    furnish to Lender, concurrent with the execution of this Agreement and within ninety (90) days after the end of each fiscal year period of Borrower a copy of its financial statements, to include, but not be limited to, operating statements, balance sheet and cash flow statements, prepared in accordance with accounting principles, consistently applied, and certified to be true and correct by Borrower which shall be in such detail as Lender may reasonably require and furnish to Lender within fifteen (15) days following the close of each month, financial statements concerning the operations of the Premises prepared in accordance with accounting principles, consistently applied, and in such detail as Lender may require and certified to be true and correct by the Borrower;

A0028847 BKA 1

N.   promptly notify Lender of any change of the fiscal year of Borrower;

O.   promptly submit Owner's Statement, and cause General Contractor to deliver to the Title Insurance Company a Contractor's Sworn Statement and required waivers of lien with respect to services, labor and material furnished and installed pursuant to the Construction Contract or any other applicable agreement to provide services, labor or material to or for the benefit of the Land and Improvements and copies thereof to Lender if requested by Lender;

P.   not, without the consent of Lender, change the Budget or Construction Schedule in any respect except for Change Orders which according to the terms hereof do not require Lender's consent;

Q.   shall, on a monthly basis, furnish monthly operating statements and financial statements with respect to the Improvements;

R.   pay within ten (10) days following receipt of invoice or as part of the Subsequent Disbursement, any and all of Lender's reasonable expenses relating to the Loan, including, without limitation, recording, registration and filing charges and taxes, charges of the title insurer, photocopying, printing and photocopy expenses, costs of surveys, escrow charges, costs of all studies of the soil, including, without limitation, toxic waste studies, costs of certified copies of instruments and other documents, all reasonable costs, fees and expenses of Lender's Consulting Architect/Engineer and Environmental Consultant, and all reasonable attorney's fees relative to the preparation and delivery of this Agreement and the Loan Documents and the disbursement of the proceeds of the Loan ("Lender's Expenses");

S.   upon thirty (30) days' prior written notice to Lender or Borrower by a governmental agency that the Premises are not in compliance with Environmental Laws, and without utilizing any of the proceeds of the Loan, but at Borrower's sole cost and expense, to commence and diligently pursue until completion all actions as shall be necessary or advisable for the cleanup of the Land and Improvements including all removal, containment and remedial actions, all in accordance with applicable Environmental Laws (and in all events, with respect to the Land and Improvements, in a manner satisfactory to Lender), and shall further pay all cleanup, administrative and enforcement costs of applicable governmental agencies which may be asserted against the Land, Improvements or Lender with respect to the Land and Improvements under Environmental Laws;

A0028847.BKA 1

14

T.   execute and deliver or cause to be executed and delivered to Lender now, and at any time or times hereafter, all documents, instruments, letters of direction, notices, authorizations, reports, acceptances, receipts, consents, waivers, affidavits and certificates as Lender may reasonably request, in form satisfactory to Lender, to perfect and maintain perfected the liens granted by Borrower to Lender upon the Land and Improvements or other collateral securing the Loan pursuant hereto and Loan Documents and in order to consummate fully all of the transactions contemplated hereunder; and in connection therewith, Borrower hereby irrevocably makes, constitutes and appoints Lender and any of its officers, employees or agents, to act as its true and lawful attorney with power to sign the name of Borrower to any such document, instrument, letter of direction, notice, report, acceptance, receipt, consent, waiver, affidavit or certificate as provided for in this Agreement if Borrower has not complied with Lender's request to execute or cause such documents to be executed within ten (10) days from date of written request, provided, however, that Lender shall not in any way change the amount of the Loan or the Interest Rate specified in the Note or any other terms therein by the exercise of such power of attorney;

U.   to the fullest extent permitted by law, Borrower shall indemnify, save and keep Lender harmless from any damage, claims or causes of action brought by third parties arising out of or related to a known or alleged design or construction defect of the Improvements, or otherwise arising out of or related to Borrower's operations and management or other activities of the Improvements;

V.   not use the proceeds of the Loan for the purpose or carrying of registered equity securities within the purview of Regulation G of the Federal Reserve Board or for the purpose of retiring any indebtedness which was originally incurred for any such purpose;

W.   except for the written notice required by the provisions hereof and the Loan Documents, Borrower waives to the fullest extent permitted by law: (i) any and all notice or demand which Borrower might be entitled to receive with respect hereto or the Loan Documents by virtue of any applicable statute or law; (ii) any demand, protest, notice of payments and non-payments, or any default, release, compromise, settlement, extension or renewal of all notes, instruments or documents at any time held by Lender on which Borrower may in any way be liable; and (iii) notice of any action

A0028847.BKA 1

15

taken by Lender unless expressly required hereby or by the Loan Documents;

X.    so long as the Loan remains unpaid: promptly furnish Lender with such information concerning the affairs of Borrower as Lender may reasonably request from time to time hereafter; promptly notify Lender of any condition or event which constitutes Monetary Default or Non-Monetary Default or with respect to any term, condition, warranty, representation or provision hereof, to Borrower's knowledge, of any material adverse change in the financial condition of Borrower; maintain a system of accounting consistent with industry standards in accordance with generally accepted accounting principles, consistently applied; within the time periods provided herein, furnish to Lender true and correct copies of accounting statements relating to the Land and Improvements and financial statements of Borrower in form satisfactory to Lender provided that such accounting and financial statements need not be certified;

Y.    Borrower shall not suffer or permit any amendment of the Operating Agreement, which, in Lender's reasonable judgment, could adversely affect the Land and Improvements or Lender's security interests granted pursuant to the Loan Documents;

Z.    execute any amendment to or modification of any Contractual Agreement without Lender's approval except for Change Orders which according to the terms hereof do not require Lender's consent; Borrower shall deliver to Lender notice of the termination of any Contractual Agreement and copies of any notice of default sent or received by Borrower with respect to any Contractual Agreement; and

5.02.    With respect to Hazardous Materials:

A.    the use and operation of the Property shall comply with all Environmental Laws. All required governmental permits and licenses shall remain in effect, and Borrower shall comply therewith. All Hazardous Materials present, handled or generated on the Land and Improvements will be disposed in a lawful manner. Without limiting the foregoing, all Hazardous Material shall be handled in compliance with all applicable Environmental Laws;

B.    Borrower shall immediately notify Lender and provide copies upon receipt of all written complaints, claims, citations, demands, inquiries, reports or notices relating to the condition of the Property or compliance with

A0028847 BKA 1

Environmental Laws. Borrower shall promptly cure and have dismissed with prejudice any such actions and proceedings to the satisfaction of Lender and shall keep the Premises free of any lien imposed pursuant to any Environmental Laws;

C.     Borrower shall provide such information and certifications which Lender, may reasonably request from time to time to insure Borrower's compliance with this Agreement.   To investigate Borrower's compliance with Environmental Laws and with this Agreement, Lender shall have the right, but no obligation, at any time to enter upon the Property upon reasonable notice to Borrower and subject to the rights of tenants therein under their leases, take samples, review Borrower's books and records, interview employees and officers, and conduct similar activities.   Borrower shall cooperate in the conduct of such an audit; and

D.     Lender is entitled to rely upon Borrower's representations and warranties contained in this Agreement despite any independent investigations by Lender or its consultants.   Lender shall provide copies to Borrower of any Environmental Report for the Property obtained by it without making any warranty or representation as to such Environmental Report.   The Borrower shall take reasonable actions to determine for itself and to remain aware of, the environmental condition of the Land and Improvements and shall have no right to rely upon any environmental investigations or findings made by Lender or its consultants.

5.03.   For the purposes of this Agreement, the term " Lender's "Environmental Liability" shall mean any losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, costs, judgments, suits, proceedings, damages (including consequential damages), disbursements or expenses, of any kind or nature whatsoever (including reasonable attorneys fees at trial and appellate levels and experts fees and disbursements and expenses incurred in investigating, defending against or prosecuting any litigation, claim or proceeding) which may at any time be imposed upon, incurred, by or asserted or awarded against Lender or any of Lender 's parent and subsidiary corporations, and their affiliates, shareholders, directors, officers, employees, and agents (collectively "Affiliates") in connection with or arising from:

A.     any Hazardous Material on, in, under or affecting all or any portion of the Property, the groundwater, or any surrounding areas;

B.     any misrepresentation, inaccuracy or breach of any warranty, covenant or agreement contained or referred to in Sections 3.01 and 5.01 S., or if pertaining to Hazardous Materials anywhere else in this Agreement;

C.    any violation or claim of violation by Borrower of any Environmental Laws; or

D.    the imposition of any lien for damages caused by or the recovery of any costs for the cleanup, release or threatened release of Hazardous Material on the Property.

Borrower agrees to indemnify, defend (at trial and appellate levels and with counsel acceptable to Lender and at Borrower's sole cost) and hold Lender, and its Affiliates free and harmless from and against Lender 's Environmental Liability except that such indemnity shall not extend to any grossly negligent acts or wilful misconduct of Lender or to environmental problems first arising after the Cut-Off Date (as defined below). The foregoing indemnification, defense and hold harmless obligations shall survive the Cut-Off Date. As used in this Agreement, the "Cut-Off Date" means the earlier of the date the Loan is paid in full, the date Borrower's interest in the Property is transferred to Lender by Deed or other assignment, or the date on which title to Borrower's interest in the Property vests in Lender as purchaser at the foreclosure sale.

Borrower, its successors and assigns, hereby waives, releases and agrees not to make any claim or bring any cost recovery action against Lender under CERCLA or any state equivalent, or any similar law now existing or hereafter enacted in connection with the Property except to the extent that such claim or cost recovery action is based on damages caused by Lender's gross negligence or wilful misconduct or with regard to environmental problems first arising after the Cut-Off Date. It is expressly understood and agreed that to the extent that Lender is strictly liable under any Environmental Laws in connection with the Property, the obligation of Borrower to Lender under this indemnity shall likewise be without regard to fault on the part of Borrower with respect to the violation or condition which results in liability to Lender, except to the extent that Lender 's liability is due to its gross negligence or wilful misconduct or to environmental problems first arising after the Cut-Off Date.

5.04.    The provisions hereof are by this reference incorporated into the terms of the Mortgage and shall be secured thereby as if fully set forth in the Mortgage.

5.05.    Borrower shall neither enter into any agreement with third parties, by the provisions of which this Agreement or Loan Documents are to be amended, without the prior written consent of Lender, nor shall Borrower approve any changes to Plans and Specifications ("Change Orders") or permit any work to be performed in conformity with Change Orders except with the prior written consent of Lender; PROVIDED, HOWEVER, that the consent of Lender will not be required for any individual Change Order which increases or decreases the cost of construction of Improvements by an amount less than FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00), and only to the extent that collectively the aggregate of all such Change Orders do not exceed TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00).

A0028847 BKA 1

Copies of all Change Orders and evidence of any necessary approvals thereof shall be promptly delivered to Lender, regardless of whether the approval of Lender is required.

## ARTICLE SIX

## CONDITIONS PRECEDENT TO DISBURSEMENT

6.01. Lender shall be under no obligation to make the Initial Disbursement unless and until Lender is in receipt of executed Loan Documents and the following conditions shall have been satisfied:

A.  The Warranties and Representations are true and correct on the date of Initial Disbursement (before and after giving effect thereto) with the same effect as if made on the date thereof;

B.  Borrower shall have furnished to Lender, for its approval:

(1)  With the First Subsequent Disbursement, copies of Plans and Specifications, current-date certificate of Architect, in form and content satisfactory to Lender ("Architect's Certificate"), setting forth that Plans and Specifications are sufficient to complete the construction of Improvements in conformity therewith and with Applicable Laws;

(2)  Certificate from the General Contractor identifying all required Permits (copies of which will be provided with the First Subsequent Disbursement);

(3)  Written report of the Environmental Consultant, satisfactory to Lender in all respects, setting forth that the Property is free and clear of all matters with respect to Hazardous Material caused by either on-site or by off-site conditions which are in the knowledge of or readily observable by the Environmental Consultant or which would have come to the knowledge of the Environmental Consultant upon due diligence ("Environmental Report") and, a written Operations and Maintenance Plan for removal of asbestos, lead-based paint and other specified Hazardous Material, if applicable;

A0028847 BKA 1

19

(4)     Certificates of Insurance with the original of each policy of insurance required under Article Eleven hereof to follow promptly thereafter;

(5)     Chicago Title Insurance Company ("Title Insurance Company") shall have issued or be prepared to issue, a mortgage loan policy ("Title Policy") in the amount of the Loan and otherwise in form and content acceptable to Lender, which shall (a) indicate that title to the Property is vested in Borrower and such title is good and marketable, free and clear of defects, liens or encumbrances, except for such exceptions to title as may be acceptable to Lender ("Permitted Exceptions"), (b) insure that the Mortgage is a first and valid lien on the Property subject only to the Permitted Exceptions, (c) provide for the issuance of "interim certifications" reaffirming the first lien priority of the Mortgage and setting forth that the amount of Loan proceeds disbursed from time to time is not subordinate to the lien of any person, firm, corporation or other entity furnishing or supplying services, labor or material to or for the benefit of the Improvements, and (d) contain 3.0 zoning endorsement (with commitment to issue a 3.1 zoning endorsement when construction of Improvements has been completed), comprehensive and pending disbursement endorsements, and such other endorsements as may be reasonably required by Lender;

(6)     A survey of the Property prepared by a land surveyor licensed in the State of Illinois, dated not earlier than forty (40) days before the Closing Date, certified as having been prepared for Lender and the Title Insurance Company, in strict compliance with the requirements of the laws of the State of Illinois, and of both ALTA/ASCM Joint Survey Standards and Society of Professional Land Surveyors ("Plat of Survey"), incorporating and indicating:

a)      The boundary lines and legal description of the Land;

b)      The location of the foundations of Improvements on the Property. In the event the foundations of the Improvements have not been completed, then from time to time as the foundations of the Improvements are completed, Borrower shall provide to Lender a survey of the Property showing said foundations;

A0028847 BKA 1

20

c)  The location of all recorded and unrecorded easements for utilities, ingress and egress, or for whatever other purpose affecting the use or enjoyment of the Property, identifying all recorded easements by recordation number;

d)  Identifying by recordation number, all matters of record affecting the Property capable of being located and identified on the Plat of Survey such as building set back lines, building height restrictions and the like;

e)  Location of adjacent streets, alleys, public and private ways, identifying each as being either public or private;

f)  Ingress and egress to and from public roads and highways; and

g)  The lack of encroachment of the foundations of Improvements over and upon adjacent land and encroachment, if any, of improvements situated on adjacent land over and upon the Land;

All data, legends and information set forth on the Plat of Survey shall be satisfactory to Lender and shall establish to Lender's satisfaction, that the value of and title to the Land and Improvements is not materially diminished or adversely affected thereby.

NOTE: Within sixty (60) days of completion of the Improvements, the Plat of Survey shall be updated to reflect the condition of Land and Improvements "as-built".

(7)  Intentionally Omitted;

(8)  Certified copies of Borrower's organizational documents, including, but not limited to, the Operating Agreement;

(9)  Searches of the appropriate UCC filing offices showing no security interests affecting Borrower;

(10)  Satisfactory evidence which may be in the form of a certificate of Architect or sworn statement of General Contractor that the

Improvements can be completed in accordance with the Construction Schedule;

(11)   A request for advance, indicating Budget Costs paid and to be paid from Loan proceeds requested and, in itemized and cumulative form, the aggregate of the Budget Cost, the amounts paid on account thereof and amounts to be paid ("Request for Advance);

(12)   Duplicate original Owner's Statement and General Contractor's Sworn Statement;

(13)   Paid receipts, invoices or vouchers relative to Budget Costs paid;

(14)   The legal opinion of Borrower's attorney which shall be satisfactory to Lender in all respects, setting forth that (a) Borrower is duly organized and validly existing pursuant to the laws of the State of Illinois, (b) Borrower has the sole authority to execute this Agreement and Loan Documents and the execution hereof and thereof is not in conflict with or prohibited by the terms and conditions of any other agreement to which Borrower is a party, (c) the Loan Documents and Contractual Agreements are valid and enforceable in accordance with their respective terms, subject only to applicable bankruptcy, insolvency or other debtor relief laws relating to or affecting the enforcement of creditor's rights generally; (d) the Loan complies with Applicable Laws relating to the payment of interest and (e) to Borrower's attorneys' actual knowledge and without independent investigation, there are no judicial or other proceedings pending which may materially and adversely affect or prohibit the making of the Loan and the execution and delivery of the Loan Documents, or which may affect or prohibit the construction and occupancy of the contemplated Improvements;

(15)   Appraisal of Land and Improvements, prepared by an appraiser acceptable to Lender indicating an "As Is" value of not less than $3,250,000.00, an "As completed" value of not less than $6,500,000.00;

(16)   Construction Loan Disbursement Agreement;

(17   Such credit reports and/or financial statements on Borrower and Guarantors as Lender may require; and

A0028847 BKA 1

22

(18    Such other certifications, affidavits or legal opinions as may be necessary, in Lender's reasonable opinion, to authorize and confirm the execution and delivery of this Agreement and the Loan Documents;

C.    Borrower shall have performed or otherwise satisfied all of the terms, covenants, conditions and agreements contained herein and in the Loan Documents to be performed or satisfied on or before the Initial Disbursement of the Loan;

D.    Neither Monetary Default nor Non-Monetary Default shall have occurred nor shall any circumstance exist which, with the giving of notice or the passage of time, or both, would, in the reasonable opinion of Lender, constitute a Monetary Default or Non-Monetary Default;

E.    Borrower shall have satisfied all of the obligations required of it pursuant to Contractual Agreements and Applicable Laws;

F    Certified copies of Contractual Agreements.

6.02.   The obligation of Lender to make additional disbursements of the proceeds of the Loan following Initial Disbursement ("Subsequent Disbursements") and Final Disbursement are conditioned upon the following:

A.    All of the applicable conditions required for Initial Disbursement shall have been satisfied and all necessary governmental approval and permits for construction of the Improvements shall be obtained by Borrower on or before the second Disbursement;

B.    The Warranties and Representations are true and correct in all material respects on the date of each Request for Advance (before and after giving effect thereto) with the same effect as if made on said date;

C.    Borrower shall have furnished to Lender satisfactory:

(1)    Current-date Request for Advance indicating changes in, variations from and additions to the last preceding Request for Advance,

(2)    Copies of current-date Owner's Statement and General Contractor's Sworn Statement and Waivers of Lien, together with paid bills and invoices relative to Budget Costs,

A0028847.BKA 1

23

       (3)     Current-date endorsement to Title Policy, increasing the limits of liability of the Title Insurance Company to the amount of the Loan proceeds then disbursed insuring that except for taxes not yet due and payable, Permitted Exceptions and the lien of the Loan Documents, no additional exceptions to title have been added to the Title Policy, and

       (4)     Current-date Architect's Certificate, and, if reasonably required by Lender, current-date Environmental Report.

D.     Lender is in receipt of a current-date certification satisfactory to it, issued by Consulting Architect/Engineer;

E.     Neither Monetary Default or Non-Monetary Default shall have occurred and remain uncured nor shall any circumstance exist which would, in the judgment of Lender, with the giving of notice or the passage of time, or both, constitute a Monetary Default or Non-Monetary Default;

F.     Satisfactory evidence by estoppels or certification by Borrower of compliance with Applicable Laws the Contractual Agreements;

G.     Construction of Improvements is in substantial conformity with the Construction Schedule.

and in the case of the final advance:

H.     Evidence of the approval by all applicable governmental authorities of (i) the completion of construction of the Improvements in its entirety for occupancy by lessees and the issuance of a certificate or equivalent permission to the extent any such certificate is a condition of the lawful use and occupancy of the Improvements, and (ii) the contemplated uses thereof;

I.     Advice from the Consulting Architect/Engineer to the effect that all of the work performed in connection with the Improvements was performed to its reasonable satisfaction and that substantial completion of the Improvements has occurred; and

J.     Such other documents, letters, affidavits, reports and assurances, as Lender, the Consulting Architect/Engineer and/or the Title Insurance Company may reasonably require.

<u>ARTICLE SEVEN</u>

A0028847.BKA 1

24

CONSTRUCTION OF IMPROVEMENTS

7.01.    On or before to the Completion Date, Improvements shall be completed in substantial conformity with Plans and Specifications and Applicable Laws.

7.02.    Borrower shall permit Lender, the Consulting Architect/Engineer and Environmental Consultant to inspect the Property and Improvements and the books, records and all other matters pertaining thereto upon reasonable advance notice to Borrower and shall cooperate with Lender and keep Lender advised as to such matters.

7.03.    If any proceedings are filed or are threatened to be filed seeking to or which may:

A.    enjoin or otherwise prevent or declare invalid or unlawful the construction of the Improvements,

B.    enjoin or otherwise prevent the use and operation of all or any substantial part of the Improvements,

C.    adversely affect the validity of the Note or the validity or priority of the liens and security interests granted to Lender pursuant to the Security Documents, or

D.    have a material adverse effect on the financial condition of Borrower or the ability of Borrower to complete construction of the Improvements on or before the Completion Date,

then, and in any such event, Borrower shall immediately notify Lender of such proceedings and, within ten (10) business days following said notice, shall cause such proceedings to be vigorously contested in good faith by its attorneys and in a manner satisfactory to Lender. In the event of an adverse ruling or decision, Borrower shall prosecute all permitted appeals relative thereto and shall, without limiting the generality of the foregoing, resist the entry or seek the stay of any temporary or permanent injunction which may be entered and use its best efforts to seek a favorable and speedy disposition of all such proceedings. Notwithstanding the good faith contest or prosecution of such proceedings, Borrower shall continue to be obligated to perform all of the terms, covenants, conditions and agreements specified herein and in the Loan Documents, including construction of the Improvements in accordance with the Budget and within the time period set forth on the Construction Schedule.

7.04.    With respect to Contractual Agreements and Permits, Borrower shall:

A.    neither suffer nor permit any material breach or default to occur in any of the obligations of Borrower pursuant thereto nor suffer or permit the same

A0028847 BKA 1

to terminate by reason of any failure of Borrower to satisfy any requirement thereof, including requirements with respect to time limitations and the right to commence and effect completion of Improvements, on or prior to the Completion Date;

B.    keep the same in full force and effect and promptly notify Lender of any default thereunder; and

C.    execute all documents necessary for the consummation of the transactions contemplated thereby.

7.05.   Borrower shall comply with its agreements set forth in the Operating Agreement and Applicable Laws, the Contractual Agreement and all other covenants, conditions, restrictions and easements of record applicable to or affecting the Property and construction of the Improvements.

7.06.   Before the Closing Date and from time to time thereafter, Lender may forward requests for information or verification to any person, firm or corporation who or which has contracted with Borrower with respect to the cost of the Improvements and in the event that such requests for information or verification should disclose that a Monetary Default or Non-Monetary Default has occurred or is about to occur, Lender may require, as a condition to further disbursement of the proceeds of the Loan that such discrepancies be eliminated to its reasonable satisfaction.

## ARTICLE EIGHT

### MECHANICS' LIENS AND CONTEST THEREOF

8.01.   Notwithstanding anything contained herein, or contained in the Mortgage, to the contrary, Borrower shall not suffer or permit any mechanics' lien claims to be filed or otherwise asserted against the Property or Improvements and shall discharge the same within thirty (30) days of notice of the existence of the lien in case of the filing of any claims for lien or proceedings for the enforcement thereof; provided, however, that Borrower shall have the right to contest in good faith and with reasonable diligence the validity of such lien or claims, upon furnishing the Title Insurance Company such security or indemnity as it may require to induce it to issue its preliminary report on title or its ALTA Form Mortgage Policy insuring against all such claims or liens and provided further that Lender will not be required to make any further disbursements of the proceeds of the Loan until any mechanics lien claims shown by a preliminary report on title or interim binder, have been waived or insured against by the Title Insurance Company.

8.02.   If Borrower shall fail within thirty (30) days of notice of existence of the lien either:

A0028847 BKA 1

A.    to discharge same;

B.    to give security or indemnity in the manner provided in the preceding paragraph; or

C.    to maintain such indemnity or security so required by the Title Insurance Company for its full amount,

then, and in any event, Lender may, at its election (but shall not be required to) upon five (5) business days notice procure the release and discharge of any such claim and any judgment or decree thereon, and further, may, in its sole discretion, effect any settlement or compromise of the same, or may furnish such security or indemnity to the Title Insurance Company, and any amounts so expended by Lender, including premiums paid or security furnished in connection with the issuance of any surety company bonds, shall be deemed to constitute a disbursement of the proceeds of the Loan. In settling, compromising or discharging any claims for lien, Lender shall not be required to inquire into the validity or amount of any such claims.

## ARTICLE NINE

## CLOSING DATE AND DISBURSEMENT

9.01.    Initial Disbursement shall be made provided that the Loan conditions for the Initial Disbursement are satisfied ("Closing Date") and Subsequent Disbursements shall be made not more frequently than monthly, in conformity with the terms and conditions hereof, which Subsequent Disbursements and Final Disbursement shall have the same priority and security specified in and provided by the Loan Documents as the Initial Disbursement.

9.02.    If Lender reasonably concludes that, at any time during the term of this Agreement, Deficiencies shall exist or that the Budget does not contain a "line" item or category for a cost required to complete the Improvements in accordance with Plans and Specifications, Applicable Laws or Contractual Agreements, Lender shall notify Borrower, in writing, which notice shall set forth the amount of such Deficiency or the amount of the omitted "line" item and Borrower shall, within ten (10) days following receipt of such notice, deposit with Lender the amount set forth therein (on which Lender shall not be obligated to pay interest), in cash or other security acceptable to Lender which shall be next disbursed by Lender as though such amount was an undisbursed part of the proceeds of the Loan.

9.03.    Initial Disbursement, Subsequent Disbursements and Final Disbursement shall be applied on account of Budget Costs in the following order of priority:

A.    To Lender, in payment of Lender's Fee;

A0028847.BKA 1

27

B.     To the payment of Lender's Expenses;

C.     To the payment of other Budget Costs included within Requests for Advance approved by Lender.

9.04.  Costs of construction of Improvements shall be subject to retainage ("Retainage") of ten percent (10%) until fifty percent (50%) of the work required pursuant to the applicable contract or subcontract is satisfactorily completed, at which time Retainage may be reduced to five percent (5%) upon certification by the Consulting Architect/ Engineer that the services, labor or material required therefor have been completed or installed and upon satisfaction of the conditions required for final disbursement; PROVIDED, HOWEVER, that (a) no Retainage shall be held with respect to so-called "soft costs", and (b) Retainages for subcontractors who have completed work may be reduced or released with Lender's approval.

## ARTICLE TEN

## LENDER'S FEE

10.01.  Borrower shall, on the Closing Date, pay to Lender, as and for Lender's fee for making the Loan: two percent (2%) of the Loan amount as Lender's fee.

## ARTICLE ELEVEN

## INSURANCE AND CONDEMNATION

11.01.  Borrower shall purchase and keep in full force and effect, in amounts and with companies and in form and content acceptable to Lender:

A.     Builder's All Hazard Risk Insurance on the All Hazard Risk, non-reporting, with coverage with an agreed amount endorsement as required by Lender with a waiver of co-insurance with respect to the Property and Improvements;

B.     Public liability and workman's compensation and employer's liability insurance with respect to the Property and Improvements; and

C.     Any other insurance coverage that Lender determines, in its reasonable discretion, to be necessary.

All such policies shall contain loss payable clauses or name Lender as an additional insured and provide for not less than thirty (30) days' prior written notice to Lender of cancellation or material modification thereof. Lender may require that insurance risks be reinsured with companies and in

A0028847.BKA 1

amounts satisfactory to it.  At Lender's option, the originals of all such insurance policies shall be deposited with Lender.

In the event that all or any part of the Property and Improvements are damaged by an insured casualty, Borrower shall establish to the satisfaction of Lender that the Property and Improvements can be restored prior to the Completion Date or the Extended Maturity Date, if extended by Lender, that no Monetary Default or Non-Monetary Default has occurred and no event has occurred which with the giving of notice or the passage of time, or both, could result in either such default, that the available insurance proceeds together with the balance of the Loan proceeds and other available funds are sufficient to make the necessary repairs, and that the insurance proceeds shall be applied to repairs or restoration upon such procedures as Lender may specify.

11.02.  In the event that all or any part of the Property and Improvements is taken or damaged by eminent domain proceedings of any governmental authority, the award payable thereby shall be paid to Lender and applied to the payment of the principal balance and accrued interest due and owing on the Loan, after deducting all costs, if any, incurred in connection therewith and any excess to Borrower or as Borrower may direct.

## ARTICLE TWELVE

## DEFAULTS AND REMEDIES

12.01.  A default by Borrower in the payment of the whole or any part of any of the several installments due and owing pursuant to the Note when due, or in the payment of all other fees, costs and expenses required to be paid by Borrower pursuant hereto as provided herein, or in the payment of amounts specified in Section 9.02 other than Deficiencies, or in the payment of Deficiencies, when due, pursuant hereto shall be deemed a monetary default pursuant hereto (collectively "Monetary Default"), and the existence of any one or more of the following events and the continuance thereof for ten (10) days after written notice thereof from Lender to Borrower:

A.  The failure of Borrower to perform or satisfy any of the terms, covenants, conditions and agreements required of it, pursuant hereto and to the Contractual Agreements and Applicable Laws and the Loan Documents PROVIDED HOWEVER, that if such default is capable of being cured but requires work to be performed, acts to be done or conditions to be remedied which by their nature reasonably cannot be performed, done or remedied, as the case may be, within such ten (10) day period, no default shall occur hereunder if Borrower shall within said ten (10) day period commence and thereafter diligently pursue a course of action reasonably expected to cure such default and the same is

A0028847.BKA 1

cured within ten (10) days after such notice PROVIDED THAT no such cure period shall extend the Completion Date;

B. Warranties and Representations and warranties and representations which relate to Environmental Materials, or any one (1) of the same, are, is or shall become untrue, PROVIDED HOWEVER, that if such default is capable of being cured but requires work to be performed, acts to be done or conditions to be remedied which by their nature reasonably cannot be performed, done or remedied, as the case may be, within ten (10) days, no default shall occur hereunder if Borrower shall within said ten (10) day period commence and thereafter diligently pursue a course of action reasonably expected to cure such default and the same is cured within sixty (60) days after such notice;

C. The failure of Borrower to effect completion of the Improvements or a discontinuance or abandonment of construction so that the same cannot, in Lender's reasonable judgment, be completed in substantial conformity with the Construction Schedule on or prior to the Completion Date;

D. If, at any time prior to the Cut-Off Date, whether as the result of an intentional or unintentional act or omission on the part of Borrower or any person other than Lender or Lender's agents occupying or otherwise using all, or any part of the Property and Improvements, a releasing, spilling, leaking, pumping, pouring, emptying or dumping of a Hazardous Material into or onto the Property and Improvements shall occur in violation of Environmental Laws and such occurrence is not in the reasonable opinion of Lender remedied in conformity with applicable laws.

E. Except as otherwise permitted by the provisions hereof, Borrower permits a tax or other lien or encumbrance, or performs any act or fails to act in a manner which results in creating a lien inferior or superior to the lien of the Security Documents described herein, and the payment of the same is not secured to the satisfaction of Lender, or otherwise discharged within thirty (30) days after the filing of the lien;

F. The filing of formal charges, by any governmental or quasi-governmental entity, including without limitation, the issuance of an indictment, under a RICO Related Law against Borrower or a Guarantor;

A0028847.BKA 1

30

G.   The bankruptcy or insolvency of General Contractor or Architect and the failure of Borrower to procure a replacement contractor or architect reasonably satisfactory to Lender, within thirty (30) days following the occurrence of such bankruptcy or insolvency who or which (as the case may be) is willing to assume the obligations of the General Contractor or Architect pursuant to their respective contractual agreements;

H.   Except as permitted herein, any transfer, assignment or encumbrance of the Property and Improvements or any interest therein;

I.   The existence of any collusion, fraud, dishonesty or bad faith by or with the knowledge of Borrower which, in any way, materially relates to or affects the Loan;

J.   Borrower shall:

   (1)   make an assignment for the benefit of creditors,

   (2)   apply for, seek, consent to or acquiesce in the appointment of a receiver, custodian, trustee, examiner, liquidator or similar official for it or for any substantial part of its property,

   (3)   institute any proceeding seeking the entry of an order for relief pursuant to the Federal Bankruptcy Act to adjudicate it a bankrupt or insolvent or seeking dissolution, winding-up, liquidation, reorganization, arrangement, adjustment or composition of its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors or failure to file an answer or other pleading denying the material allegations of any such proceeding filed against it, or

   (4)   fail to contest in good faith any appointment or proceeding described in paragraph K. following.

K.   Without the application, approval or consent of Borrower a receiver, trustee, examiner, liquidator or similar official shall be appointed for it and such appointment continues undischarged or such proceeding continues undismissed or unstayed for a period of thirty (30) consecutive days;

shall constitute a non-monetary default pursuant hereto (collectively "Non-Monetary Default").

A0028847.BKA 1

12.02. In the event of the occurrence of a Monetary Default or a Non-Monetary Default, at the election of Lender, obligation to make the Initial Disbursement, Subsequent Disbursements or the Final Disbursement, as the case may be, shall terminate and all sums due to Lender pursuant to the provisions hereof and the Loan Documents shall immediately become due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived and Lender, in addition to all remedies conferred upon Lender by law, by equity and by the terms of the Loan Documents and except as otherwise limited by the provisions hereof, may pursue any one or more of the following remedies concurrently or successively, it being the intent hereof that none of such remedies shall be to the exclusion of any others: take possession of the Premises and complete construction of the Improvements and do anything in its reasonable judgment to fulfill the obligations of Borrower hereunder, including the right to avail itself of and procure performance of Contractual Agreements and any other existing contracts with respect to the construction of the Improvements, let any contracts with the same contractors or others in connection with the construction of the Improvements or management of the Property and Improvements and employ agents to protect the Premises. Without restricting the generality of the foregoing and for the above-stated purposes, Borrower hereby authorizes Lender to exercise any and all of Lender's rights or remedies under the Note and Loan Documents, to complete the Improvements and to make changes in the Plans and Specifications which shall be necessary or desirable to complete the Improvements; to retain or employ new general contractors, subcontractors, architects and inspectors, as shall be required for said purposes; to pay, settle or compromise all existing bills and claims which may be liens, or to prevent such bills and claims from becoming liens against the Property and Improvements, or to take any actions as may be necessary or desirable for the completion of all such work or for the clearance of title to the Property and Improvements; and to execute all applications and certificates in its own name, which may be required by any of the Contractual Agreements. To the extent necessary, and without limiting any of Lender's rights to pursue its remedies hereunder, Borrower hereby irrevocably appoints GMACCM as its attorney-in-fact, to do any and every act which the Borrower might do in its own behalf and to execute instruments of release and satisfaction if Borrower has not complied with Lender's request to do any of the above acts or execute such instruments after seven (7) days written notice requesting such action (except in the event of an emergency no such prior notice shall be necessary) it being understood and agreed that this authorization shall be a power coupled with an interest and cannot be revoked.

12.03. All obligations of the Borrower and all rights, powers and remedies of GMACCM provided herein and in the Loan Documents, shall be cumulative and in addition to and not in limitation of those provided under applicable law. BORROWER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THE LOAN DOCUMENTS, THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT WHICH MAY BE DELIVERED IN THE FUTURE IN CONNECTION HEREWITH OR ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT,

AND AGREES THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

12.04. Any and all costs and expenses (including reasonable attorneys, appraisers, engineers, architects, surveyors and other consultants and advisors fees) incurred by Lender, which if not paid when billed shall bear interest at the "Default Rate" (as such term is defined in the Note), in pursuing its remedies hereunder, exercising the aforesaid power of attorney and granting of consents and approvals required of and granted by Lender by the provisions hereof, shall be an additional indebtedness due and owing by Borrower to Lender and shall be secured by this Agreement and the Loan Documents. The foregoing power of attorney shall be deemed coupled with an interest and not revocable until payment in full of the principal balance and accrued interest due and owing on the Loan.

## ARTICLE THIRTEEN

## ASSIGNMENT

13.01. Except as permitted in the Mortgage, Borrower shall not sell, contract to sell, option, assign, pledge, transfer or otherwise dispose of its rights and interests in this Agreement or the Property or Improvements without the consent of Lender.

## ARTICLE FOURTEEN

## SELECTION OF CONTRACTORS, MATERIALS AND EXECUTION OF OCCUPANCY LEASES

14.01. Borrower has accepted and hereby accepts sole responsibility for the selection of its own contractor or contractors, all materials, supplies and equipment to be used in construction of the Improvements and Lender assumes no responsibility for adequacy or sufficiency of materials, or design or engineering, or for the completion of the Improvements according to Plans and Specifications and Applicable Laws.

14.02. Contractual Agreements and any contract documents between Borrower and any contractor employed by it or any material suppliers shall not be in conflict with the covenants, agreements, promises and representations contained in this Agreement.

A0028847.BKA 1

33

## ARTICLE FIFTEEN

## ADDITIONAL CONDITIONS

15.01.  The Loan Documents shall be in a form and substance reasonably satisfactory to Lender and Lender shall, at all times, have the right to establish, to its satisfaction and in its reasonable discretion, the existence or non-existence of any act which is a condition to this Agreement.

15.02.  Borrower is not a party to any plan defined and regulated under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended.  None of the assets of Borrower are "plan assets" as defined in 29 C.R.F. Sec. 2509.75-2 or Sec. 2510.3-101.

15.03.  This Agreement and the Loan Documents represent the entire, integrated agreements between Borrower and Lender with respect to the acquisition of the Property and the construction of the Improvements and supersede all prior negotiations, representations or agreements pertaining thereto and may not be modified, amended, waived or discharged in any manner other than by written amendment executed by Borrower and Lender.

15.04.  Lender shall, upon five (5) days written notice (except no notice is required in an emergency) have the right, but not the obligation, to perform any and all acts which Lender may deem reasonably necessary to assure the protection of the Loan and the lien, charge and security thereof, including, but not limited to, during the continuance of a Monetary Default or Non-Monetary Default, the settlement, compromise or contest of any lien or claim of lien, the taking of possession of the Property, completion of Improvements and the commencement of, appearance in or defense of any action or proceeding purporting to affect the rights, obligations or duties of Borrower and Lender.  Any reasonable expense paid or incurred or any reasonable advance made by Lender in connection therewith shall be paid by Borrower to Lender upon demand and such amounts as are advanced or expended by Lender hereunder shall be secured by the Loan Documents and shall bear interest from the date of such advance or expenditure at the Default Rate of interest specified in the Note.

15.05.  Lender and its representatives, agents and representatives, shall, at all times, have access to the Property upon reasonable advance notice for the purpose of inspecting any part or all thereof or for any other purpose whatsoever, which inspections shall be for the sole benefit of Lender and not for the benefit of Borrower or any other person, and Borrower acknowledges that the periodic inspections of the construction and installation of Improvements made by or through or for Lender are for its loan administration purposes only and neither:

        A.      Lender nor any of its representatives, agents or representatives assume any responsibility or liability to any person by reason of such inspections

except to the extent of its or its representatives, agents or representatives' gross negligence or wilful misconduct or shall be deemed, in any way, responsible to any person for any matters relating to the design or the construction and installation of the Improvements; and

B.   Borrower may not rely upon such inspections for any purpose whatsoever, including, but not limited to, the stage of completion of construction and installation, payments due to contractors, subcontractors and material men, matters of design, adequacy of workmanship or materials and compliance with the Limited Partnership Agreement, Plans and Specifications, Applicable Laws and Contractual Agreements.

15.06. Lender shall not be liable to Borrower, General Contractor, Architect, contractors, subcontractors, materialmen or to any other party for services performed or materials supplied in connection with the Property and Improvements or for any debts or claims accruing in favor of any such parties against Borrower or the Property and Improvements. Borrower is not now or shall not hereafter be an agent of Lender for any purpose and Lender is not and shall not be deemed to be:

A.   A venture partner with Borrower in any manner whatsoever; or

B.   In privity of Contractual Agreements nor shall any payment of funds directly to Architect, General Contractor, contractors, subcontractors or materialmen be deemed to establish any third party beneficiary status or recognition of the same by Lender unless and until Lender expressly assumes such status in writing;

and approvals granted by Lender for any matters set forth pursuant hereto shall be narrowly construed to be applicable to only the parties and facts identified in any written approval or, if not in writing, such approvals shall be solely for the benefit of Borrower.

15.07. Borrower does hereby agree to indemnify and hold harmless Lender, its directors, officers, employees, agents and parent and subsidiary corporations, and each of them (each an "Indemnified Party"), from and against any and all liabilities, claims, damages or expenses incurred by any Indemnified Party arising out of or by reason of entering into this Agreement and the Loan Documents, the making of the Loan, the consummation of the transactions contemplated by this Agreement and the Loan Documents, or the use or contemplated use of the Loan, or the operation or maintenance of any of the Property and Improvements (if such liabilities, claims, damages or expenses arise in connection with Lender making the Loan hereunder) or the operation of Borrower and to pay or reimburse each Indemnified Party for the reasonable fees and disbursements of counsel incurred in connection with any investigation,

A0028847 BKA 1

35

litigation or other proceedings (whether or not Lender is a party thereto) arising out of or by reason of any of the aforesaid; provided that the foregoing shall not apply to any liability, claim, damage or expense arising from the breach by Lender of any of its obligations hereunder, or arising from the negligence or wilful misconduct of the Indemnified Party, or arising from the violation by the Indemnified Party of any law applicable to such Indemnified Party with respect to claims in connection with environmental problems first arising after the Cut-Off Date. Each Indemnified Party will promptly give Borrower written notice of the assertion of any claim which it believes is subject to the indemnity set forth in this Section 15.07 and will upon the request of Borrower promptly furnish Borrower with all material in its possession relating to such claim or the defense thereof to the extent that the Indemnified Party may do so without breach of duty to others. If Borrower and any Indemnified Party are both parties to any litigation or other proceedings as to which such Indemnified Party is entitled to indemnification under this Section, the defense of Borrower and such Indemnified Party shall be conducted by joint counsel chosen by Borrower and approved by Lender, but only if and so long as such Indemnified Party shall not have determined on advice of counsel that conflicts or potential conflicts of interest make it inappropriate for such Indemnified Party to be represented by joint counsel in the reasonable exercise of its discretion. In the event of Lender's determination that representation by joint counsel would be a conflict or potential conflict of interest then the Indemnified Party shall be represented by counsel selected by the Indemnified Party and paid for by Borrower. Borrower shall be liable to pay any amounts properly due to any Indemnified Party request upon final determination of liability under this Section 15.07 immediately upon demand by such Indemnified Party. The indemnities set forth in this Section 15.07 shall survive the payment by Borrower of all amounts payable under the Note or any of the Loan Documents which may be paid out of Net Revenue if available.

15.08. Neither failure by Lender to exercise, or delay by Lender in exercising, any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. The rights and remedies provided in this Agreement and Loan Documents are cumulative and not exclusive of each other or of any right or remedy provided by law or by equity. No notice to or demand upon Borrower, in any instance, shall, in itself, entitle Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of Lender to any other or further action in any circumstance without notice or demand.

15.09. Notwithstanding that the Interest Reserve will be established for the payment of interest due and owing on the Loan, Borrower is and shall remain liable for the payment of interest on the Loan and of all other sums due and owing pursuant hereto and to the Note and Loan Documents.

15.10. If at any time or times, Lender employs counsel to protect, collect, lease, sell, take possession of, or liquidate any portion or all of the Land and Improvements, or to attempt to

A0028847 BKA 1

36

enforce any security interest or lien in any portion or all of the Land and Improvements or to collect amounts due to Lender or to enforce any rights of Lender against any person, firm, corporation or entity which may be obligated to Lender by virtue of the provisions hereof or the Loan Documents, heretofore, now or hereafter delivered to Lender by or for the benefit of Borrower or to render advice or other services with respect to any of the foregoing matters, then in any of such events all of the reasonable attorney's fees arising from such services, and any expenses, costs and charges relating thereto, shall constitute an additional liability owing by Borrower to Lender, payable on demand, with interest at the Default Rate.

15.11. Mere receipt by Lender of any instrument or document shall not be deemed to be approval thereof, any approvals required hereunder to be in writing only, signed by Lender and delivered to Borrower.

15.12. Any notices, demands and requests required or desired to be given hereunder shall be in writing and shall be deemed properly served if delivered in person, or by facsimile transmission with receipt thereof, or by United States registered or certified mail, return receipt requested postage prepaid, or by Federal Express or other comparable overnight service, addressed as follows:

|  |  |
|---|---|
| If to Borrower: | Chicago Title Land Trust Co.<br>171 N. Clark Street, 4th Floor<br>Chicago, IL 60601<br>Fax: 312-223-2129 |
| with a copy thereof to: | Charles Levy<br>Charles Levy & Associates, Ltd.<br>One N. LaSalle Street, Suite 1525<br>Chicago, IL 60603<br>Fax: 312-641-5924 |
| If to Lender: | Broadway Bank<br>5960 N. Broadway<br>Chicago, IL 60660<br>Fax: 773-989-4896 |
| with a copy thereof to: | Alexander R. Domanskis<br>Boodell & Domanskis, LLC<br>205 N. Michigan Avenue, Suite 4307<br>Chicago, IL 60601<br>Fax: 312-540-1162 |

A0028847 BKA 1

37

Any of the foregoing addresses may be changed from time to time if designated in writing by the party to be given notice. Notices, demands and requests given by United States mail in the manner aforesaid shall be deemed sufficiently served or given for all purposes hereunder three (3) business days after the deposit thereof in the United States mail.

15.13. This Agreement and Loan Documents shall become effective only upon the execution and delivery hereof and thereof by Lender and Borrower, as the case may be.

15.14. This Agreement shall be construed and enforced in accordance with the laws of the State of Illinois.

15.15. This Agreement shall not be construed more strictly against Lender than against Borrower merely by virtue of the fact that the same has been prepared by counsel for Lender, it being recognized that Borrower and Lender have contributed substantially and materially to the preparation of this Agreement.

15.16. The captions of various Articles herein are for convenience only and are not to be utilized in construing the content or meaning of the substantive provisions hereof. Borrower and Lender each acknowledges and waives any claim contesting the existence and the adequacy of the consideration given by the others in entering into this Agreement.

15.17. In the event of any inconsistency among the terms hereof (including incorporated terms) or between such terms and the terms of the Note and Loan Documents, or between the terms of the Borrower's application for Loan and Lender's commitment to make the Loan, the terms of this Agreement shall be applicable, govern and prevail but no such application shall invalidate the Note or the validity or priority of the other Loan Documents. The whole or partial invalidity, illegality or unenforceability of any provision hereof at any time, whether pursuant to the terms of then Applicable Law or otherwise, shall not affect:

        A.    in the instance of partial invalidity, illegality or unenforceability, the validity, legality or enforceability of such provision at such time except to the extent of such partial invalidity, illegality or unenforceability; or

        B.    the validity, legality or enforceability of such provision at any other time or of any other provision hereof at that or any other time.

15.18. All words herein which are expressed in the masculine or neuter gender shall be deemed to include the masculine, feminine and neuter genders. Any word herein which is expressed in the singular or plural shall be deemed, whenever appropriate in the context, to include the plural and the singular.

A0028847.BKA 1

15.19. This Agreement shall be binding upon and shall inure to the benefit of Borrower and Lender, their respective successors, assigns, grantees and legal representatives.

15.20. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Agreement.

15.21. Exculpation. This document is executed by Chicago Title Land Trust Co., not personally, but as trustee to Chicago Title Insurance Co., not personally or individually, but solely as Trustee under Trust Agreement dated November 29, 2005, and known as Trust No. 8002345462, in the exercise of the power and authority conferred upon and vested in it as such trustee (and said Chicago Title Land Trust Co. hereby warrants that it possesses full power and authority to execute the instrument) and it is expressly understood and agreed that nothing contained herein or in the Note or in any other instrument given to evidence the indebtedness secured hereby shall be construed as creating any liability on the part of said Borrower, or on said Chicago Title Land Trust Co. personally, to pay said Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant, either impress or implied, herein contained, all such liability, if any, being hereby expressly waived by the legal owners or holders of the Note, and by every person now or hereafter claiming any right or security hereunder, and that so far as the Borrower and said Chicago Title Land Trust Co. personally are concerned, the legal holders of the Note and owner or owners or any indebtedness accruing hereunder shall look solely to the premises hereby mortgaged or conveyed for the payment thereof by the enforcement of the lien created in the manner herein and in said Note provided or by action to enforce the personal liability of the other Borrowers. Trustee does not warrant, indemnify, defend title nor is it responsible for any environmental damage.

**CONTINUED ON NEXT PAGE**

A0028847 BKA 1

IN WITNESS WHEREOF, Borrower and Lender have executed or caused this Agreement to be executed by their duly authorized representatives on the day and year first above written.

under

Chicago Title Land Trust~~Box~~ Company as trustee
Trust Number 8002345462,~~xxxxxxxxx~~ and not person

By: _____

Its:        Trust Officer

_____
Mohammad Siddiqui

_____
Mohammad Quadeer

BROADWAY BANK, a Illinois banking corporation

By: _____

Name: ___VINIT  SHAH_____

Title: ___LOAN   OFFICER_____

A0028847 BKA 1

40

IN WITNESS WHEREOF, Borrower and Lender have executed or caused this Agreement to be executed by their duly authorized representatives on the day and year first above written.

Chicago Title Land Trust Co.
Trust Number 8002345462, as trustee

By: _____

Its: _____

Mohammad Siddiqui

Mohammad Quadeer

5601-09 Clark Commons, Inc., an Illinois corporation

By: _____
    Its _____

5601-09 N. Clark St., LLC, an Illinois limited liability company

By: _____

Its   MANAGER

A0028847.BKA 1

41

## EXHIBIT A

## LEGAL DESCRIPTION

Commitment Number:  2065401

LOT 33 IN BLOCK 2 IN BRYN MAWR ADDITION TO EDGEWATER, BEING A
SUBDIVISION IN THE SOUTHWEST ¼ OF SECTION 5, TOWNSHIP 40 NORTH, RANGE
14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

A0028847.BKA 1

## EXHIBIT B

## BUDGET



A0028847.BKA 1