## LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT (this "Agreement") is made as of this 30th day of November, 2007 by and among CHICAGO TITLE LAND TRUST COMPANY AS TRUSTEE UNDER LAND TRUST NUMBER 8002345462, DATED November 29, 2005 and not personally, with an address at 181 West Madison Street, 17th Floor, Chicago, IL 60602, MOHAMMAD SIDDIQUI, and 5601-09 CLARK COMMONS, INC., an Illinois corporation with an address at 1 N. LaSalle Street, Suite 1525, Chicago, Illinois 60602 (collectively and individually referred to herein as "Borrower") and BROADWAY BANK, an Illinois banking corporation, 5960 North Broadway, Chicago, Illinois 60660 ("Lender").

### RECITALS:

A.  Lender is the owner and holder of that certain Loan Note (the "Note") dated March 29, 2006 in the original principal amount of Four Million Five Hundred Twenty Five Thousand and 00/100 Dollars ($4,525,000.00), made by Borrower to Lender.

B.  Mohammad Quadeer and 5601-09 N. Clark St., LLC, who were borrowers under the Note no longer have any legal or beneficial interest in the remaining Borrowers or the property secured by Lender's Loan.

C.  The Note is secured, among other things, by various documents referred to as loan documents and security documents.

D.  Lender is willing to extend the Loan under the terms and conditions of this Agreement.

E.  The current outstanding principal amount of the Note is Three Million Forty Nine Thousand Six Hundred and 09/200 Dollars ($3,049,600.09).

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.  **Recitals.** The foregoing recitals are hereby incorporated into and made a part of this Agreement.

2.  **Loan Extension.** The Maturity Date of the Loan is extended to November 30, 2008.

3.  **Interest Rate Change.** The applicable Interest Rate shall be amended so that interest will now accrue on the outstanding principal balance at the variable rate of the Prime Rate + two percent (2.00%) per annum, payable monthly. The index used to determine the Prime Rate for this loan will be the Prime Rate reported in the Money Rates section of the *Wall Street Journal*. If this index ceases to be a viable index, a suitable replacement will be substituted. The interest rate will be adjusted each time the index changes, however, there will be a minimum rate of 9.75% per annum during the life of the Loan.



4.  **Application of Payments.** All payments made during the loan extension period shall be payments of interest only. This Note shall have a balloon payment of principal and interest due on the Maturity Date.

5.  **Late Charges.** As part of the consideration for Lender's agreement to extend the maturity date of the Note, Borrower must pay all outstanding late charges to Lender.

6.  **Exit Fee.** As part of the consideration for Lender's agreement to extend the maturity date of the Note, Borrower must pay two percent (2%) of the currently outstanding principal balance of the Loan ($3,049,600.09) as an Exit Fee, as Lender would not otherwise agree to extend the Loan. The Exit Fee is due in all events, whether in the event of default, as portion of partial prepayments or full payment under the Agreement, or upon Maturity. Lender is not obligated to accept payment without payment of the Exit Fee and shall not release the Loan until and unless the Exit Fee is paid.

7.  **Confirmation of Obligations.**

    (a) All references in the Security Documents to the Note shall be deemed to be a reference to the Note, as modified and amended by this Agreement.

    (b) Borrower hereby confirms and reaffirms (i) all of their obligations under the Loan Documents, as modified and amended by this Agreement; (ii) that the Security Documents, as modified and amended by this Agreement, secure the Note, as modified and amended by this Agreement; and (iii) that the Loan Documents, as modified and amended by this Agreement, are and shall remain in full force and effect.

8.  **Certifications, Representations and Warranties.** In order to induce Lender to enter into this Agreement, Borrower hereby certifies, represents and warrants to Lender that all certifications, representations and warranties contained in the Loan Documents and in all certificates heretofore delivered to Lender are true and correct as of the date hereof, and all such certifications, representations and warranties are hereby remade and made to speak as of the date of this Agreement.

9.  **Additional Certifications, Representations and Warranties.** In addition to the certifications, representations and warranties set forth in the Loan Documents, Borrower hereby certifies, represents and warrants to Lender as follows:

    (a) Borrower has full right, power and authority to enter into and execute and deliver this Agreement and to otherwise perform and consummate the transactions contemplated by this Agreement.

    (b) Mohammad Siddiqui is not under any legal disability.

    (c) Mohammad Siddiqui is the President and sole shareholder of 5601-09 Clark Commons, Inc., an Illinois corporation.

2

(d)     The execution, delivery and performance of the terms of this Agreement by 5601-09 Clark Commons, Inc, an Illinois corporation, has been duly authorized and approved.

(e)     This Agreement has been duly executed and delivered by Borrower, and constitutes the valid and legally binding obligation of Borrower, enforceable in accordance with its terms.

(f)     The execution and delivery of this Agreement and compliance with the provisions of this Agreement do not and will not conflict with or constitute a breach or violation of or default under any agreement or other instrument to which Borrower or any of them is a party, or by which Borrower or any of them is bound, or to which any of the properties of Borrower or any of them is subject, or any existing law, administrative regulation, court order or consent decree to which Borrower or any of them is subject.

(g)     There is no litigation or administrative proceeding pending or threatened to restrain or enjoin the transactions contemplated by this Agreement or questioning the validity hereof, or in any way contesting the powers of Borrower, or in which an unfavorable decision, ruling or finding would adversely affect the transactions contemplated by this Agreement.

(h)     Borrower is in full compliance with all of the terms and conditions of this Agreement and of the Loan Documents, as modified and amended by this Agreement, and no event of default has occurred and is continuing with respect thereto, and no event has occurred and is continuing that, with the lapse of time or the giving of notice or both would constitute such an event of default; and Borrower does hereby release and waive any and all (i) defenses to payment of obligations under the Loan Documents, as modified and amended by this Agreement; and (ii) claims or causes of action which Borrower may have against Lender or its agents.

(i)     Borrower does not now have or hold any defense to the performance of any of its obligations under the Loan Documents, as modified and amended by this Agreement, and does not have any claim against Lender which might be set off or credited against any payments due under the Loan Documents, as modified and amended by this Agreement.

(j)     There are no actions at law, suits in equity or proceedings, pending or threatened, before any court, governmental agency, commission, bureau or tribunal, or any arbitration proceedings, involving Borrower or any of them that, if adversely determined, would materially affect the present condition, financial or otherwise, of Borrower or any of them.

(k)     There are no pending or threatened bankruptcy or like proceedings against or involving Borrower or any of them under the Bankruptcy Code of the United States or any chapter thereof or any like statute, state or federal.

10.   Not a Novation.   Borrower and Lender expressly state, declare and acknowledge that this Agreement is intended only to modify Borrower's continuing obligations under the Loan Documents in the manner set forth herein, and is not intended as a novation.

11. <u>Successors</u>. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns.

12. <u>Construction</u>.

(a) The words "hereof", "herein", and "hereunder", and other words of similar import refer to this Agreement as a whole and not to the individual sections in which such terms are used.

(b) The headings of this Agreement are for convenience only and shall not define or limit the provisions hereof.

(c) Where the context so requires, words used in singular shall include the plural and vice verse, and words of one gender shall include all other genders.

13. <u>Execution of Counterparts</u>. This Agreement may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

14. <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Illinois and the applicable laws of the United States of America.

*[SIGNATURES CONTAINED ON FOLLOWING PAGE]*

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written, the execution hereof by the Borrower constituting a certification by the Managing Member executing on its behalf that the representations and warranties made are true and correct as of the date hereof and that he is the appointed Managing Member and the incumbent in the office indicated under his name.

**BORROWER:**

**Chicago Title Land Trust Company as Trustee under Trust Number 8002345462, and not personally**

By: _____

Its: _____
  Trust Officer

_____
Mohammad Siddiqui

**5601-09 Clark Commons, Inc., an Illinois corporation**

By: _____
  Mohammad Siddiqui, Its President

It is expressly understood and agreed by and between the parties hereto, anything to the contrary notwithstanding, that each and all of the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of the Trustee while in form purporting to be the warranties, indemnities, representations, covenants, undertakings and agreements of said Trustee are nevertheless each and every one of them, made and intended not as personal warranties, indemnities, representations, covenants, undertakings and agreements by the Trustee or for the purpose or with the intention of binding said Trustee personally but are made and intended for the purpose of binding only that portion of the trust property specifically described herein, and this instrument is executed and delivered by said Trustee not in its own right, but solely in the exercise of the powers conferred upon it as such Trustee; and that no personal liability or personal responsibility is assumed by nor shall at any time be asserted or enforceable against the undersigned land trustee, on account of this instrument or on account of any warranty, indemnity, representation, covenant or agreement of the said Trustee in this instrument contained, either expressed or implied, all such personal liability, if any, being expressly waived and released.

5