## LOAN NOTE

$4,525,000.00                                                                                    March 29, 2006

FOR VALUE RECEIVED, CHICAGO TITLE LAND TRUST Company as trustee under / LAND TRUST NUMBER 8002345462, DATED November 29, 2005, and not personally, with an address at *181 West Madison Street, 17th Floor, Chicago, Illinois 60602, MOHAMMAD SIDDIQUI, MOHAMMAD QUADEER, 5601-09 CLARK COMMONS, INC., an Illinois corporation with an address at 1 N. LaSalle Street, Suite 1525, Chicago, Illinois 60602 and 5601-09 N. CLARK ST., LLC, an Illinois limited liability company with an address at 1350 W. Thorndale Avenue, Suite 1, Chicago, Illinois 60660 (referred to herein as the "Maker"), promises to pay to the order of BROADWAY BANK, an Illinois banking corporation ("Payee"), at its place of business at 5960 N. Broadway, Chicago, Illinois 60660, or at such place as the holder hereof may from time to time designate in writing, the principal sum of Four Million Five Hundred and Twenty Five Thousand ($4,525,000.00) (the "Loan"), in lawful money of the United States of America, with interest thereon to be computed on the unpaid principal balance from time to time outstanding at the Applicable Interest Rate (as such term is defined in Section 2 hereof), and to be paid in installments as follows:

Monthly payments of interest only at the Applicable Interest Rate, calculated from time to time in accordance with Section 3 hereof, shall be due and payable in arrears on the 29th day of each calendar month beginning with the first full calendar month after the date hereof; and

Maker will pay this loan in one principal payment of Four Million Five Hundred and Twenty Five Thousand ($4,525,000.00) plus interest on September 29, 2007 ("Maturity Date"). This payment due on the Initial Maturity Date will be for all principal and all accrued interest not yet paid. In addition, Maker will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 29, 2006 with all subsequent interest payments to be due on the 29th day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to unpaid collection costs and late charges, then to accrued unpaid interest, and finally to principal.

Payee is making a Loan to Maker pursuant to a Loan Agreement. Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Loan Agreement or in the Other Loan Documents.

1. **Loan Term.**

(a) The Loan shall mature on September 29, 2007 (the "Maturity Date").

(b) Lender is UNDER NO OBLIGATION TO REFINANCE AT MATURITY AND HAS MADE NO REPRESENTATIONS IN THAT REGARD. The Loan may have to be repaid from other financing or other assets of the Maker or Guarantors with the new interest rate considerably higher than the present rate.

(c) To the extent permitted by Applicable Law, Payee reserves a right of setoff in all of Maker's accounts with Payee (whether checking, savings, or some other account). This includes all accounts Maker holds jointly with someone else and all accounts maker may open in the future. However, this does not include any IRA Keogh accounts, or any trust

*181 West Madison Street, 17th Floor, Chicago, Illinois   60602

EXHIBIT C

accounts for which setoff would be prohibited by law. Maker authorizes Payee, to the extent permitted by Applicable Law, to charge or setoff all sums owing on the Loan against any and all such accounts, and, at Payee's option, to administratively freeze all such accounts to allow Payee to protect Payee's charge and setoff rights provided herein.

2. **Applicable Interest Rate.** Interest will accrue on the outstanding principal balance at the variable rate of the Prime Rate plus one percent (1.0%) per annum, payable monthly. The index used to determine the Prime Rate for this loan will be the Prime Rate reported in the Money Rates section of the *Wall Street Journal*. If this index ceases to be a viable index, a suitable replacement will be substituted. The interest rate will be adjusted each time the index changes, however, there will be a minimum rate of 9.75% per annum during the life of the Loan.

3. **Calculation of Interest; Application of Payments.**

(a) Interest on the outstanding principal balance of this Note shall be calculated on the basis of a 360-day year for the actual number of days elapsed in each calendar or partial calendar month for which calculation is made.

(b) The first interest accrual period hereunder shall commence on April 29, 2006 and continue on the 29th day of each and every calendar month thereafter until the Applicable Maturity Date.

(c) The Prime Rate, and the amount of interest payable monthly, shall be adjusted each time the index changes (the "Prime Reset Date"), commencing as of the date of this Note, however, there will be a minimum rate of 9.75% during the life of the Loan.

(d) Unless otherwise agreed, required by applicable law or upon Maker's Default, payments will be applied first to unpaid collection costs, late charges and Lender's charges, then to accrued unpaid interest under this Note, and then to principal. Upon any Default, payments shall be applied by Maker. All amounts due under this Note shall be payable on the 29th day of each calendar month commencing April 29, 2006, without setoff, counterclaim or any other deduction whatsoever.

4. **Security for the Loan; Loan Documents.**

This Note is evidenced or secured by: (i) this Note, (ii) the Loan Agreement; (iii) a Mortgage and Security Agreement dated as of the date hereof by and between Maker and Payee (the "Mortgage") affecting the land and improvements related to and located at 5601-09 N. Clark Street, Chicago, IL 60660 (the "Premises"); (iv) an Environmental Indemnity Agreement dated as of the date hereof by and between Maker and Payee (the "Environmental Agreement"); and (v) such other documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note including, without limitation, any collateral assignments and reserve and/or escrow accounts (such other documents, collectively, the "Other Security Documents " or "Other Loan Documents", and together with the Loan Agreement, the Mortgage, the Second Mortgage, the Environmental

- 2 -

Agreement and any and all other instruments, agreements or documents, now or hereafter evidencing, securing or otherwise relating to the Loan, as the same may be amended, restated, renewed, consolidated and/or replaced from time to time in accordance with their respective terms, collectively, the "Loan Documents").

5. **Late Charge.** If any sum payable under this Note is not paid before the tenth (10th) day after the date such payment is due, Maker shall pay to Payee, on demand, an additional amount, equal to five percent (5%) of such delinquent sum, to defray the expenses incurred by Payee in handling and processing such delinquent payment and to compensate Payee for the loss of the use of such delinquent payment from the date such payment is due, and such additional amount shall be secured by the Mortgage, and the Other Security Documents.

6. **Default.** The entire outstanding principal balance of this Note, together with all accrued and unpaid interest thereon and all other sums due under the Loan Documents (all such sums, collectively, the "Debt"), or any portion thereof, shall without notice become immediately due and payable at the option of Payee: (a) if any payment required in this Note is not paid when due; or (b) upon the happening of any other Default under and as defined in the Mortgage, or in any other Loan Documents executed by Maker in favor of Payee (each of the foregoing, a "Default"). In the event that Payee retains counsel to collect the Debt or to protect or foreclose the security provided in connection herewith after a Default, Maker also agrees to pay on demand all costs of collection incurred by Payee, including reasonable attorneys' fees for the services of counsel whether or not suit is brought.

7. **Default Interest.** Upon Default, which includes failure to pay when payments are due, failure to pay upon maturity or where technical default exists due to material changes that have not been reported in writing, and agreed upon by the Bank, the Payee, at its option, but subject to Payee giving notice, via regular mail to Maker's address set forth herein may enforce the following remedies and or any other remedies available to the Payee under applicable law: (a) Declare the entire unpaid principal balance and all accrued interest immediately due, without notice and then Maker will pay that amount; or (b) Declare an increase in the interest rate to eighteen percent (18%) Default Interest until default is cured by paying all delinquent principal and interest. Should the default condition not be cured, foreclosure proceedings may be initiated to collect the Loan in full. The parties hereto agree that the Default Interest represents reasonable damages that would be suffered by Maker.

8. **Prepayment.** There shall be no prepayment penalty.

9. **No Usury.** It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Payee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Payee's exercise of the option to accelerate the maturity of this Note, or if any prepayment by Maker results in Maker having paid any interest in excess of

that permitted by applicable law, then it is Maker's and Payee's express intent that all excess amounts theretofore collected by Payee shall be credited on the principal balance of this Note and all other Debt (or, if this Note and all other Debt have been or would thereby be paid in full, refunded to Maker), and the provisions of this Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law and so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Payee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

10. **Transfers Not Permitted.** Without the prior written consent of Payee, Maker shall not sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer, or permit the transfer of, directly or indirectly, the Premises or ownership interests of Maker, except as permitted in the Loan Agreement and the Other Security Documents.

11. **Authority.** Maker represents that Maker has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note, the Mortgage and the other Loan Documents to be executed by it and that to Maker's knowledge this Note, the Mortgage and the other Loan Documents to be executed by it constitute valid and binding obligations of Maker.

12. **Notices.** All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Mortgage directed to the parties at their respective addresses as provided therein.

13. **WAIVER OF JURY TRIAL.** MAKER AND PAYEE AGREE THAT ANY CLAIM, COUNTERCLAIM, OR OTHER ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER AND PAYEE, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO TRIAL BY JURY WOULD OTHERWISE ACCRUE. MAKER AND PAYEE ARE EACH HEREBY AUTHORIZED BY THE OTHER TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MAKER AND PAYEE.

14. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Illinois and the applicable laws of the United States of America.

15. **Miscellaneous.**

(a) A release of the Premises (as that term is defined in the Mortgage) from the Mortgage shall occur and an appropriate instrument of reconveyance or release shall, in due course, be made by Payee and delivered to Maker, at Maker's expense upon payment in full of the Indebtedness.

(b) Subject to paragraph (a), no release of any security for the Debt or any person liable for payment of the Debt, no extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of the Loan Documents made by agreement between Payee and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Maker, and any other person or party who might be or become liable for the payment of all or any part of the Debt, under the Loan Documents.

(c) Maker and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, notice of intent to accelerate the maturity hereof and of acceleration. If, after receipt of any payment of all or any part of the Debt, Payee is compelled or agrees, for settlement purposes, to surrender such payment to any person or entity for any reason (including, without limitation, a determination that such payment is void or voidable as a preference or fraudulent conveyance, an impermissible setoff, or a diversion of trust funds), then this Note and the other Loan Documents shall continue in full force and effect or be reinstated, as the case may be, and Maker shall be liable for, and shall indemnify, defend and hold harmless Payee with respect to the full amount so surrendered. The provisions of this Section shall survive the cancellation or termination of this Note and shall remain effective notwithstanding the payment of the obligations evidenced hereby, the release of any security interest, lien or encumbrance securing this Note or any other action which Payee may have taken in reliance upon its receipt of such payment. Any cancellation, release or other such action shall be deemed to have been conditioned upon any payment of the obligations evidenced hereby having become final and irrevocable.

(d) This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by both of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Payee" and "Maker" shall include their respective successors, assigns, heirs, executors and administrators.
If Maker consists of more than one person or party, the obligations and liabilities of each such person or party shall be joint and several. Time is of the essence with respect to all obligations of Maker under this Note.

16. **Exculpation.** This document is executed by Chicago Title Land Trust Company [Co.], not personally, but as trustee to Chicago Title Insurance Co. [Company], not personally or individually, but solely as Trustee under Trust Agreement dated November 29, 2005, and known as Trust No. 8002345462, in the exercise of the power and authority conferred upon and vested in it as such trustee (and said Chicago Title Land Trust Company [Co.] hereby warrants that it possesses full power and

- 5 -

authority to execute the instrument) and it is expressly understood and agreed that nothing contained herein or in the Note or in any other instrument given to evidence the indebtedness secured hereby shall be construed as creating any liability on the part of said Borrower, or on said Chicago Title Land Trust Company, not personally, to pay said Note or any interest that may accrue thereon, or any indebtedness accruing hereunder, or to perform any covenant, either impress or implied, herein contained, all such liability, if any, being hereby expressly waived by the legal owners or holders of the Note, and by every person now or hereafter claiming any right or security hereunder, and that so far as the Borrower and said Chicago Title Land Trust Company, not personally are concerned, the legal holders of the Note and owner or owners or any indebtedness accruing hereunder shall look solely to the premises hereby mortgaged or conveyed for the payment thereof by the enforcement of the lien created in the manner herein and in said Note provided or by action to enforce the personal liability of the other Borrowers. Trustee does not warrant, indemnify, defend title nor is it responsible for any environmental damage.

<u>**Signatures Follow On Next Page.**</u>

**IN WITNESS WHEREOF,** Maker has duly executed this Note on the day and year first above written.

**MAKER:**

Chicago Title Land Trust Co. Company as trustee under Trust Number 8002345462, as trustee and not personally

By: _____

Its: Trust Officer

_____
Mohammad Siddiqui

_____
Mohammad Quadeer

5601-09 Clark Commons, Inc., an Illinois corporation

By: _____
Its PRESIDENT

5601-09 N. Clark St., LLC, an Illinois limited liability company

By: _____
Its MANAGER